(916 P.2d 725)

No. 73,601

STATE OF KANSAS, *Appellee*, v. JAMES ROBERT TOLLIVER, *Appellant*.

Opinion filed May 17, 1996.

*Julie A. Gorenc* and *Elizabeth Seale Cateforis*, assistant appellate defenders, and *Jessica R. Kunen*, chief appellate defender, for appellant.

*Kerwin L. Spencer*, county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before BRAZIL, C.J., LEWIS and KNUDSON, JJ.

BRAZIL, C.J.: James Tolliver pled guilty to burglary. At sentencing, the parties agreed with the presentence investigation (PSI) report's statement that Tolliver had no criminal history, and Tolliver received 24 months' probation pursuant to the presumption for a 7-I offense. Three weeks after sentencing, the State moved to set aside Tolliver's sentence as illegal, alleging Tolliver actually possessed a lengthy criminal history and was on parole when the burglary offense was committed. At a hearing on the motion, the State further claimed Tolliver had failed to advise the court services officer during the presentence investigation of his correct criminal history. A supplemental PSI report was introduced at the hearing which showed Tolliver's criminal history classification as category B. The court resentenced Tolliver pursuant to grid block 7-B and imposed a sentence of 31 months' imprisonment and ordered the sentence to run consecutive to the sentence for which Tolliver was on parole when the burglary was committed. Tolliver appeals, arguing the court erred in granting the State's motion to correct an illegal sentence. We vacate the second sentence and remand with directions to reinstate the original sentence.

Tolliver argues that the original sentence imposed by the court was not illegal and that the Kansas Sentencing Guidelines Act (KSGA) places no affirmative duty upon a defendant to discuss his or her criminal history with a presentence investigator. The State counters that Tolliver went beyond mere nondisclosure by affirmatively misleading the State concerning his criminal history.

The issue presented requires this court to determine whether Tolliver's original sentence was illegal as a matter of law. If it was

not illegal, then the trial court erred in resentencing Tolliver. This issue also requires interpretation of the KSGA to determine the extent of the State's burden to prove criminal history at the time of sentencing and a defendant's obligation, if any, to either come forward at sentencing with information concerning criminal history or refrain from misrepresenting criminal history. On these questions of law, this court's scope of review is unlimited. See *State v. Donlay*, 253 Kan. 132, 133-34, 853 P.2d 680 (1993).

Tolliver first challenges the State's position, apparently accepted by the trial court, that Tolliver's original sentence was illegal. Our Supreme Court has defined an illegal sentence as follows:

"An 'illegal sentence' is either a sentence imposed by a court without jurisdiction; a sentence which does not conform to the statutory provisions, either in the character or the term of the punishment authorized; or a sentence which is ambiguous with respect to the time and manner in which it is to be served." *State v. Thomas*, 239 Kan. 457, 460, 720 P.2d 1059 (1986).

It is not clear which of these bases was relied upon by the trial court when it granted the State's motion to correct Tolliver's sentence. The State's position on appeal is that, because Tolliver's criminal history classification was actually a category B, the court lacked authority to sentence him other than in accordance with grid block 7-B, absent a departure sentence. The State's argument, therefore, seems to suggest either that the court lacked jurisdiction to impose the sentence it imposed or that the sentence imposed failed to conform to the statutory punishment authorized for an offender under grid block 7-B.

For support, the State cites cases where a court has revoked a defendant's probation based upon the defendant's past criminal conduct which was unknown at sentencing, particularly *Andrews v. State*, 11 Kan. App. 2d 322, 720 P.2d 227 (1986). In that case, after Andrews pled no contest to a charge of felony theft, the court sentenced him to 1 to 5 years' imprisonment but granted him 2 years' probation in lieu of incarceration. A few days after he was released on probation, the court learned Andrews had been convicted of several crimes in other jurisdictions. A bench warrant was issued and Andrews again was brought before the sentencing court. Without finding a probation violation, the court revoked Andrews'

probation and resentenced him to 2 to 10 years' imprisonment on the theft conviction. After serving several years of his sentence, Andrews filed a motion under K.S.A. 60-1507 seeking vacation of the court's second sentence.

On appeal, this court upheld the summary revocation of Andrews' probation based upon Andrews' misrepresentation to a court services officer and to the sentencing court that "he had never been in trouble before." 11 Kan. App. 2d 322. The court had specifically relied upon these misrepresentations in originally granting Andrews probation. 11 Kan. App. 2d at 324. However, this court further held that Andrews' 2- to 10-year sentence had to be vacated because the court was not authorized to impose a new, increased sentence upon revocation of Andrews' probation. In doing so the court stated that Andrews "was originally given a lawful sentence and the court had no authority to set this sentence aside once it was put into execution." 11 Kan. App. 2d at 325.

The State attempts to distinguish the second part of the *Andrews* holding by asserting that, in *Andrews*, the original 1- to 5-year sentence imposed by the sentencing court was a legally authorized punishment for the crime committed, while in the present case the court's original 12-month sentence was not a legally authorized punishment for an offender under grid block 7-B. The State's mischaracterization of Tolliver's grid block at the original sentencing, however, strikes at the heart of the matter. At the original sentencing, Tolliver's grid block, as agreed upon by both parties, was 7-I. A 12-month imprisonment sentence, with 24 months' probation in lieu of incarceration, is a presumptively correct sentence for an offender under grid block 7-I. See K.S.A. 21-4611(c); K.S.A. 21-4704(a).

Contrary to the State's reading, therefore, *Andrews* actually supports Tolliver's position. However, preguidelines cases are inherently difficult to apply to issues of criminal history under the KSGA because of the current heightened emphasis upon an accurate criminal history.

Several Kansas cases have considered the illegal sentence doctrine within the context of the KSGA, although none has addressed the specific issue raised in the present case. See *State v. LaGrange*,

21 Kan. App. 2d 477, 484, 901 P.2d 44, *rev. denied* 258 Kan. 861 (1995) (appellate court had jurisdiction to consider appeal from possible illegal sentence where defendant argued trial court operated under mistaken belief it had no discretion not to impose consecutive sentences); *State v. Webb*, 20 Kan. App. 2d 873, 874, 893 P.2d 255 (1995) (appellate court had jurisdiction to consider appeal from possible illegal sentence where State argued trial court applied incorrect sentencing law); *State v. Bowen*, 20 Kan. App. 2d 576, 890 P.2d 374 (1995) (appellate court had jurisdiction to consider appeal from possible illegal sentence where defendant argued Department of Corrections misapplied the KSGA provisions for consecutive sentences on defendant's sentencing guidelines report).

To support his argument that his original sentence was not illegal, Tolliver cites a Minnesota case, *State v. Rock*, 380 N.W.2d 211 (Minn. App. 1986). Minnesota is one of three states whose sentencing laws influenced our legislature in enacting the KSGA. *State v. Richardson*, 20 Kan. App. 2d 932, 935, 901 P.2d 1 (1995).

In *Rock*, Rock pled guilty to two counts of an intrafamilial sex crime, waived a presentence investigation, and was sentenced. Two prior offenses were revealed in Rock's criminal history, one of which was a felony, but both were deemed decayed under the Minnesota sentencing guidelines because of their ages. At the time of sentencing, therefore, the parties agreed that Rock had a criminal history score of zero. The State's agreement to a zero criminal history score, however, was in part influenced by Rock's misrepresentation to the State at the combined guilty plea and sentencing hearing. When asked by the prosecutor if the one felony which had been revealed was his only prior felony conviction, Rock answered, " 'Yes,' " under oath. 380 N.W.2d at 212. Believing Rock had a criminal history score of zero, the court dispositionally departed, stayed execution of sentence, and placed Rock on probation for 15 years.

As it turned out, Rock did possess another prior felony conviction which would have counted as criminal history and which would have prevented his other prior convictions from decaying, thus giving him a criminal history score of three under the Minnesota

guidelines. Upon discovering the error when a sentencing guidelines worksheet was completed over 3 months after Rock was sentenced, the State moved to correct Rock's sentence. Subsequent to the State's motion, a motion to revoke Rock's probation was apparently filed based upon Rock's unamenability to sexual offender treatment. After the revocation hearing, the court amended Rock's criminal history score to reflect the three prior offenses and modified Rock's sentence to concurrent terms of 76 and 95 months.

On appeal, the Minnesota Court of Appeals framed the issue as follows: "Did the trial court improperly impose more severe sentences than those originally imposed at sentencing?" 380 N.W.2d at 212. The court noted that the error in Rock's criminal history could have been discovered if a sentencing guidelines worksheet had been completed at the time of sentencing. "As it was, the sentence was a valid one and was authorized by law, albeit with an error." 380 N.W.2d at 213. The court also dispelled its concern that Rock might have benefitted from a fraud committed on the court at sentencing:

"Fraud requires reliance, however, and neither the prosecutor nor the court had a right to rely on the answer of the defendant to an inquiry about his criminal record. His answer was given under oath; if the prosecution feels the facts justify it, the defendant can be charged with perjury." 380 N.W.2d at 213.

The *Rock* court found that the circumstances for resentencing a defendant under Minnesota's criminal procedure law had not been met. 380 N.W.2d at 213. The circumstances for resentencing under Minnesota law are substantially similar to the circumstances set forth in K.S.A. 22-3504. See *Tauer v. State*, 451 N.W.2d 649, 650-51 (Minn. App. 1990). The *Rock* court ultimately held that "[b]ecause the sentence here was authorized by law, the trial court lacked authority under the rules to correct the sentence. The original sentence, as executed, must be reinstated." 380 N.W.2d at 213-14.

Under the reasoning and holding in *Rock*, Tolliver's original sentence would not be considered illegal because, although, the agreed-upon criminal history for Tolliver was incorrect, the sen-

tence imposed was consistent with what is authorized for a 7-I offender.

*Rock* is distinguishable in one respect. The *Rock* court found the error could have been discovered if a timely sentencing guidelines worksheet had been completed at the time of sentencing. This was because Rock misrepresented his criminal history, and a valid report would have apparently provided proof otherwise. In the present case, a PSI report, along with a criminal history worksheet, was completed at the time of sentencing. Tolliver's misrepresentation was not only as to criminal history per se but also as to his identity. The PSI report that was completed, therefore, did not provide the proof necessary for the State to show the correct criminal history classification because of Tolliver's misrepresentation of his identity.

Notwithstanding this distinction, we reach the same conclusion in this case as did the court in *Rock*—that the original sentence was a legal sentence.

The related questions raised by the parties are as stated earlier: What is the extent of the State's burden to prove criminal history at the time of sentencing, and what obligation, if any, does a defendant have to either come forward at sentencing with information concerning criminal history or refrain from misrepresenting criminal history? These questions require interpretation of the KSGA.

The *Rock* court found that, under Minnesota law, a defendant has no duty to refrain from misrepresenting criminal history. Rather, the court suggested that defendants who misrepresent criminal history could be prosecuted for the misrepresentation where the facts justified it. 380 N.W.2d at 213. We agree. In fact, the record in this case shows Tolliver was charged with making a false writing, contrary to K.S.A. 21-3711, and obstructing legal process or official duty, contrary to K.S.A. 21-3808. These charges were dismissed without prejudice upon the State's motion at the second sentencing.

Under the KSGA, "the State has the burden to prove a defendant's criminal history unless the offender admits his or her criminal history in open court." *State v. Hankins*, 19 Kan. App. 2d 1036, 1047, 880 P.2d 271 (1994). The State's burden is by a preponder-

ance of the evidence. Further, the State must prove its case to the sentencing judge at the sentencing hearing. K.S.A. 21-4715(a).

Here, there was no admission of criminal history by Tolliver in open court. Thus, the State was required to prove Tolliver's criminal history *at the sentencing hearing* by a preponderance of the evidence. At the original sentencing hearing, the State failed to prove any criminal history for Tolliver; in fact, the State did not even question Tolliver's criminal history as stated in the PSI report.

Although K.S.A. 21-4715(a) allows a defendant to admit his or her criminal history, there is no provision in the KSGA which *requires* a defendant to come forward and provide the State with an accurate criminal history. There also is no provision in the KSGA which prohibits a defendant from misrepresenting his or her identity during a presentence investigation or which explains what happens when a defendant does so. See also K.S.A. 21-4604 (provision which sets forth procedure for completing PSI report does not require defendant to provide correct identity or criminal history).

Absent an express provision by the legislature, this court should not read into the KSGA an implicit rule that sentencing proceedings are tainted when based upon misinformation by the defendant. " 'Our criminal statutes are to be construed strictly against the State.' " *State v. JC Sports Bar, Inc.*, 253 Kan. 815, 818, 861 P.2d 1334 (1993) (quoting *State v. Sexton*, 232 Kan. 539, 543, 657 P.2d 43 [1983]).

Because Tolliver had no duty to provide the State with a correct statement of his criminal history or identity, the criminal history classification of category I—which the parties agreed to at sentencing, which the court accepted, and which has not been appealed—should stand. The court's original sentence of 12 months' imprisonment with 24 months' probation in lieu of incarceration fell within the presumptive sentencing range for a 7-I offense and, therefore, was not illegal.

The second sentence is vacated, and the case is remanded with directions to reinstate the original sentence.